A05A0988. CONTINENTAL MARITIME SERVICES, INC.
v. MARITIME BUREAU, INC. et al.

(621 SE2d 775)

RUFFIN, Chief Judge.

Continental Maritime Services, Inc. ("Continental") sued Maritime Bureau, Inc. ("Maritime Bureau") and Maritime Bureau's owner, John Peck,[1] for breach of fiduciary duty, conversion, and tortious interference with business relations. Continental alleged that Peck, while working for Continental, diverted money and business from Continental to his own company. After Continental presented its case to the jury, the trial court granted the defendants' motion for a directed verdict. Continental appeals. Because we agree with the trial court that Continental did not present evidence sufficient to create a jury issue on its claims, we affirm.

The trial court should grant a directed verdict "only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict."[2] The court construes the evidence in favor of the party opposing the motion for a directed verdict.[3] We thus affirm the grant of a directed verdict only if all the evidence demands it.[4]

The evidence shows that Robert Ianniello owns a business called International Adjusters Limited ("International"), which investigates marine-related claims for insurance companies. International had used Peck, who is a marine surveyor, for work in the Savannah area. Ianniello approached Peck about forming a joint venture to work in Norfolk, Virginia. They formed a corporation called Continental Survey Bureau Southern, whose stock was owned jointly by Ianniello and Peck's wife, Virginia.

---

[1] Peck changed his name during the pendency of the case. For convenience, we refer to him as "Peck."

[2] (Punctuation omitted.) *Johnston v. Correale*, 272 Ga. App. 502 (612 SE2d 829) (2005).

[3] See id.

[4] See *Howard v. Barron*, 272 Ga. App. 360 (612 SE2d 569) (2005).

Ianniello and Peck subsequently decided to expand the business to Savannah. A new corporation, Continental, was formed, with Ianniello and Virginia Peck each owning 50 percent of the stock. Peck was not an officer or director of Continental. Ianniello was the chairman of the board of Continental.

Continental began operating in Savannah in April 1993. Maritime Bureau, Peck's company, did not merge with Continental at that time, and Ianniello understood that Maritime Bureau was continuing to do business. Peck did not have an employment agreement or a covenant not to compete with Continental.

In October 1993, Peck and another Continental employee went on a business trip on Continental's behalf to London, England. Peck was fired from Continental on October 28, 1993, after returning from the trip. On November 8, 1993, he sent a letter to potential customers of Continental whom he had visited in London, advising them that he was no longer associated with Continental and that the Maritime Bureau staff would be available to work with them.

Continental subsequently filed suit against Maritime Bureau and Peck, asserting, inter alia, that Peck wrongfully diverted work to his own company and in so doing breached his fiduciary duty to Continental and tortiously interfered with its business relations. After the case was presented to the jury, the trial court directed a verdict in favor of the defendants.

Continental alleges that the trial court erred in granting a directed verdict on its claims for breach of fiduciary duty and tortious interference with business relations, because there was evidence that (1) Peck operated a competing business, Maritime Bureau, while working for Continental; (2) after Peck's termination, Maritime Bureau and Peck kept money that clients paid to Continental for services it rendered; and (3) following Peck's termination, Maritime Bureau and Peck solicited clients that Peck had previously solicited for Continental on his trip to London.

1. First we must identify the source of Peck's alleged fiduciary duty to Continental. An officer or director of a corporation has a duty not to appropriate a business opportunity of the corporation.[5] Peck, however, was never an officer or director of Continental. And even if Peck held himself out as president of Continental, Ianniello knew that Peck was not the president. Thus, Peck cannot be liable as an officer or director for breach of fiduciary duty due to misappropriation of a corporate opportunity.[6] Furthermore, as an employee, Peck's

---

[5] See OCGA § 14-2-831 (a) (1) (C); *Bob Davidson & Assoc. v. Norm Webster & Assoc.*, 251 Ga. App. 56, 61-63 (2), (3) (553 SE2d 365) (2001).

[6] See *Davidson*, supra at 61 (2).

duty to Continental was not to solicit Continental's clients or directly compete with his employer during his employment.[7] There was no evidence presented at trial that he breached this duty.

Unlike in *E. D. Lacey Mills, Inc. v. Keith*,[8] the sole case cited by Continental on the issue of breach of fiduciary duty, there was no evidence that Peck solicited any of Continental's customers on behalf of Maritime Bureau or otherwise took action in direct competition with Continental while he was working for Continental. Peck testified that, on his business trip to London, he "was there representing solely and only Continental." The only evidence of solicitation that Continental introduced was letters Peck sent to Continental's potential customers after his termination. And actions taken after leaving one's employment do not constitute a breach of fiduciary duty.[9]

Moreover, Continental introduced no evidence to support its claim that Peck was wrongfully operating Maritime Bureau as a competing business while he worked for Continental. Ianniello testified only that he knew Maritime Bureau was doing surveys and writing reports, with his consent, in cases where Continental had a conflict of interest or did not want to do the work. He named no specific client or project that he alleged Maritime Bureau misappropriated from Continental. Accordingly, because Continental produced no evidence that Peck solicited its clients or improperly took its business while still an employee, the trial court properly granted Peck's motion for directed verdict on the claim for breach of fiduciary duty.[10]

2. Continental also claims that Maritime Bureau and Peck tortiously interfered with its business by keeping money that was properly due Continental and by soliciting Continental's potential customers. A claim of tortious interference with business relations requires proof of the following elements:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of a contractual obligation or caused a party or a third party to discontinue or fail to enter into an

---

[7] See *Instrument Repair Svc. v. Gunby*, 238 Ga. App. 138, 140 (1) (518 SE2d 161) (1999).

[8] 183 Ga. App. 357, 362-363 (9) (359 SE2d 148) (1987).

[9] See *Bacon v. Volvo Svc. Center*, 266 Ga. App. 543, 546 (3) (597 SE2d 440) (2004); *Vernon Library Supplies v. Ard*, 249 Ga. App. 853, 855 (3) (550 SE2d 108) (2001).

[10] See OCGA § 9-11-50 (a).

anticipated relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.[11]

Even construing the evidence most favorably to Continental, as we are required to do, we find that Continental did not submit evidence at trial to prove these elements.

As to its claim that Maritime Bureau and Peck misappropriated funds due Continental, Ianniello testified about one instance in which a check payable to Continental was deposited into Maritime Bureau's account. However, Peck explained that the check was payment for work performed by Maritime Bureau and Peck prior to his employment by Continental. Ianniello confirmed that the check deposited into Maritime Bureau's account was, in fact, for work that Continental could not perform because of a conflict, and in payment of a Maritime Bureau invoice. Continental failed to prove that it was due the funds at issue, let alone that Maritime Bureau and Peck acted maliciously in depositing the check.

Continental also presented no evidence that Maritime Bureau and Peck tortiously interfered with Continental's business by contacting its potential customers after Peck's termination. It failed to show improper action or wrongful conduct, as there was no employment contract or noncompete agreement that prohibited Maritime Bureau and Peck from contacting these customers.[12] And, absent such a contractual restriction, there is no bar to a former employee contacting customers of his former employer.[13]

Additionally, Continental was required to demonstrate that, but for Maritime Bureau and Peck's contact with these potential clients, it was "reasonably likely" that Continental would have developed business from them.[14] There was no evidence to this effect; Ianniello did not testify about any customer that decided not to work with Continental because of Maritime Bureau and Peck's actions.[15] Because the evidence at trial did not prove the elements of tortious interference with business relations, we affirm the trial court's grant of a directed verdict on this claim, as well.

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

---

[11] (Punctuation omitted.) *Carey Station Village Home Owners Assn. v. Carey Station Village, Inc.*, 268 Ga. App. 461, 462 (1) (602 SE2d 233) (2004).

[12] See *Bacon,* supra at 545-546 (2).

[13] See id.

[14] *Looney v. M-Squared, Inc.*, 262 Ga. App. 499, 504 (5) (586 SE2d 44) (2003).

[15] See *Fuhrman v. EDS Nanston, Inc.*, 225 Ga. App. 190, 190-191 (3) (483 SE2d 648) (1997).

DECIDED SEPTEMBER 21, 2005.

*Clark & Clark, Fred S. Clark, Heather J. Slamenick,* for appellant.

*Gannam & Gnann, J. Hamrick Gnann, Jr.,* for appellees.