**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 6, 2014**

# In the Court of Appeals of Georgia

A14A1088. KOHLER et al. v. VAN PETEGHEM et al.

BARNES, Presiding Judge.

This case involves a dispute between next-door neighbors that began with a drainage dispute but escalated to allegations of assault and battery and other intentional torts, including an allegation that the plaintiff husband intentionally spat on the face of the defendant wife during an argument. During the ensuing jury trial, the trial court directed a verdict in favor of the defendants on the plaintiffs' claim brought under the Metropolitan River Protection Act, OCGA § 12-5-440 et seq. (the "MRPA") and in favor of the defendant wife on her battery counterclaim based on the spitting incident. The jury subsequently returned a verdict in favor of the defendants on all of the remaining claims and counterclaims, and the trial court entered judgment accordingly.

On appeal from the denial of their motion for a new trial, the plaintiffs argue that the trial court erred by directing a verdict in favor of the defendant wife on her battery counterclaim and in its charge to the jury on that counterclaim because the evidence was in dispute as to whether the spitting incident was intentional. The plaintiffs further argue that the trial court erred by excluding their expert from testifying at trial and by directing a verdict in favor of the defendants on the plaintiffs' MRPA claim.

Because the evidence did not *demand* a finding that the spitting incident was intentional, we conclude that the trial court erred by directing a verdict to the defendant wife on her battery counterclaim. Consequently, we reverse the trial court's grant of the defendant wife's motion for a directed verdict on her battery counterclaim and remand for a new trial solely on that counterclaim. We affirm the judgment in all other respects.

The record reflects that Steven and Elizabeth Kohler live next door to Dirk and Mia Francesca Van Peteghem in the Grand Cascades Subdivision in Forsyth County. Both properties extend all the way to the Chattahoochee River, although the finished backyards do not extend that far. When it rains, culverts along the street carry water from several homes in the subdivision into a large drainage pipe that runs

2

underground along the property line between the Kohlers' and Van Peteghems' properties. The drainage pipe ends in the woods behind the two properties and empties water there whenever it rains. The Van Peteghems' property is at a higher elevation than the Kohlers' property; indeed, the Kohlers' property is at the lowest point in that area of the neighborhood. It is undisputed that there is a serious drainage problem in the back portion of the Kohlers' property; the dispute between the parties concerns the cause of that problem.

On August 9, 2010, the Kohlers filed their complaint in the present action against the Van Peteghems, alleging that the Van Peteghems had performed backyard landscaping work that redirected the flow of water from their property onto the Kohlers' property whenever it rained. According to the Kohlers, the redirected flow of water had caused extensive erosion and siltation problems. The Kohlers sought damages for public and private nuisance and for breach of a legal duty based on alleged violations of the MRPA, OCGA § 12-5-440 et seq.[1]

On September 13, 2010, the Van Peteghems filed their answer, denying that their backyard landscaping work caused any redirection in the flow of water onto the

[1] Initially, the Kohlers also sought attorney fees and costs, punitive damages, and injunctive relief, but they dropped those claims from their amended complaint.

Kohlers' property. According to the Van Peteghems, the erosion and siltation problems on the Kohlers' property preexisted the landscaping work and were the result of runoff from the drainage pipe and from the fact that the Kohlers' property is downhill from the other properties in that area of the neighborhood. The Van Peteghems also asserted multiple intentional tort counterclaims, including trespass, nuisance, defamation, intentional infliction of emotional distress, invasion of privacy, assault, and battery, based on their allegation that the Kohlers had subjected them and their children to a long sequence of harassment as part of their dispute over the landscaping work.

On March 18, 2011, the Van Peteghems filed a motion to dismiss the Kohlers' complaint as a sanction for their allegedly repeated failure to comply with discovery. On July 27, 2011, the trial court, after conducting a hearing,[2] entered an order declining to dismiss the Kohlers' complaint but setting certain parameters for the parties' conduct and instituting specific discovery deadlines (the "Discovery Order"). Among other things, the Discovery Order provided that except in emergency situations, the parties, other than through their attorneys, were henceforth prohibited from contacting third parties "for the purpose of making or investigating any

_____

[2] A transcript of the hearing was not included as part of the appellate record.

4

complaint or alleged issue or condition on either of the properties at issue in this case or any party to this case." The Discovery Order also required the Kohlers to identify any experts to be used at trial by July 30, 2011, and make them available for deposition by October 15, 2011.

The trial was specially set for the week of December 10, 2012. However, the Kohlers first identified Adam Hazell as a plaintiffs' expert to be used at trial in their portion of the pretrial order served on the Van Peteghems on November 16, 2012, and the Kohlers did not provide any information about Mr. Hazell's expected testimony to the Van Peteghems until December 8, 2012, two days before the first day scheduled for trial.

The Van Peteghems filed a motion in limine to exclude Mr. Hazell as an expert witness at trial. When the trial court heard the motion, the Kohlers informed the court that Mr. Hazell was a representative of the Georgia Mountains Regional Commission and would be offering testimony related to their MRPA claim, and that their counsel had not interviewed him until two weeks before trial, resulting in his belated identification as an expert. The trial court granted the Van Peteghems' motion and excluded Mr. Hazell from testifying based on the Kohlers' failure to comply with the expert deadlines in the Discovery Order.

On December 10, 2012, the parties proceeded with the trial, which lasted several days.[3] Mrs. Kohler was the sole witness to testify on behalf of the Kohlers during their case-in-chief. She testified that the landscaping work in the Van Peteghems' backyard had caused a major increase in water runoff onto the Kohlers' property, resulting in soil erosion, the growth of a large "chasm" in the wooded area of their property near the Chattahoochee River, and a substantial drop in the resale value of their property. The Kohlers also introduced photographs and video recordings that they had made in an effort to show the drainage problems caused by the Van Peteghems' landscaping work.

After the Kohlers rested their case, the Van Peteghems moved for a directed verdict on the Kohlers' MRPA claim. The Van Peteghams contended that the Kohlers had failed to present any evidence showing that their landscaping work violated the MRPA and that, in any event, the MRPA did not create a private right of action for

---

[3] Because the trial occurred in December 2012, the new Georgia Evidence Code does not apply to any of the evidentiary issues addressed in this case. See Ga. Laws 2011, Act 52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.").

6

damages. The trial court granted the Van Peteghams' motion and dismissed the Kohlers' MRPA claim.

The Van Peteghems then presented their case-in-chief. They called several witnesses, including an expert in civil engineering who opined that the conditions on the Kohlers' property were naturally occurring as a result of runoff from the drainage pipe and from the topography of the land and were not the result of the Van Peteghems' landscaping work. Additionally, the Van Peteghems both testified regarding acts of harassment they allegedly had suffered at the hands of the Kohlers. Among other things, Mrs. Van Peteghem testified regarding an incident in her front yard in which Mr. Kohler stood in her face screaming at her and his spit landed on her face.

After the Van Peteghems presented their case-in-chief, they moved for a directed verdict on Mrs. Van Peteghem's battery counterclaim against Mr. Kohler. The trial court granted the Van Peteghems' motion for a directed verdict and later instructed the jury that Mr. "Kohler's action of spitting on Mrs. . . . Van Peteghem constituted a battery under the laws of Georgia," but that it was up to the jury to determine any harm she had suffered and the amount of damages that should be awarded to her, if any.

7

Following its deliberations on the remaining claims and counterclaims, the jury returned a verdict in favor of the Van Peteghems on the Kohlers' nuisance claim and in favor of the Van Peteghems on all of their counterclaims. The jury awarded $250,500 in damages to the Van Peteghems, with the damages broken down by claim in a special verdict form. The trial court thereafter entered final judgment and denied the Kohlers' motion for a new trial, resulting in this appeal.

1. The Kohlers contend that the trial court erred by directing a verdict in favor of the Van Peteghems on the battery counterclaim. According to the Kohlers, the jury would have been authorized to find from the testimony that errant spittle landed on Mrs. Van Peteghem when Mr. Kohler was screaming at her and that he did not actually intend to spit on her. The Kohlers thus contend that the evidence did not demand a finding that Mr. Kohler committed the intentional tort of battery when his spit landed on Mrs. Van Peteghem. We agree.

Our review of a trial court's grant of a motion for directed verdict is de novo. *Sun Nurseries v. Lake Erma, LLC*, 316 Ga. App. 832, 835 (730 SE2d 556) (2012).

> The trial court should grant a directed verdict only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. The court construes the evidence in favor of the party opposing

8

the motion for a directed verdict. We thus affirm the grant of a directed verdict only if all the evidence demands it.

(Punctuation and footnotes omitted.) *Continental Maritime Svcs. v. Maritime Bureau*, 275 Ga. App. 533, 534 (621 SE2d 775) (2005).

The touching of another without her consent, even if minimal, constitutes a battery. See *Lawson v. Bloodsworth*, 313 Ga. App. 616, 618 (722 SE2d 358) (2012); *King v. Dodge County Hosp. Auth.*, 274 Ga. App. 44, 45 (616 SE2d 835) (2005). Moreover, the "unlawful touching of a person's body is actionable even if the unlawful touching is indirect, as by throwing an object or substance at the person." (Citation omitted.) *Lawson*, 313 Ga. App. at 618. Nevertheless, unauthorized touching alone is not enough; battery is an intentional tort, and "[i]t is the intent to make either harmful or insulting or provoking contact with another which renders one civilly liable for a battery." (Emphasis omitted.) *Hendricks v. Southern Bell Tel. & Tel. Co.*, 193 Ga. App. 264, 265 (1) (387 SE2d 593) (1989). If the tortfeasor acts with the belief that such unauthorized contact is substantially certain to result from his actions, that too can constitute the requisite intent to prove battery. See generally *Reeves v. Bridges*, 248 Ga. 600, 603 (284 SE2d 416) (1981) (discussing intent necessary to prove an intentional tort); Charles R. Adams III, Ga. Law of Torts § 2:1

9

(2013-2014 ed.) (same). "Intent is a question of fact for jury resolution and may be proven by circumstantial evidence, by conduct, demeanor, motive, and all other circumstances." (Citation and punctuation omitted.) *Stack-Thorpe v. State*, 270 Ga. App. 796, 805 (7) (608 SE2d 289) (2004). See *Regents of Univ. Sys. of Ga. v. Blanton*, 49 Ga. App. 602 (1) (a) (176 SE 673) (1934) (noting that "the question of intent is peculiarly within the province of the jury").

In the present case, Mr. Kohler did not testify regarding the spitting incident.[4] In contrast, Mrs. Peteghem testified that on the day in question, she was standing outside with a county inspector and the president of the neighborhood homeowners'

---

[4] The Van Peteghems argue that because Mr. Kohler failed to testify, they were entitled to a rebuttable presumption that the battery counterclaim against him was well-founded pursuant to former OCGA § 24-4-22 (2012), which provided:

> If a party has evidence in his power and within his reach by which he may repel a claim or charge against him but omits to produce it, or if he has more certain and satisfactory evidence in his power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against him is well founded; but this presumption may be rebutted.

But Mr. Kohler was a party defendant to the battery counterclaim, and "no presumption is created against the defendant for failure to testify" under OCGA § 24-4-22. *Gurin v. Harris*, 129 Ga. App. 561, 563 (3) (200 SE2d 368) (1973). See *Hendley v. Evans*, 319 Ga. App. 310, 318 (2) (b) (ii) (734 SE2d 548) (2012); *Maloy v. Dixon*, 127 Ga. App. 151, 154-155 (2) (a) (193 SE2d 19) (1972); *Ramirez v. Mansour*, 104 Ga. App. 651, 652 (1) (122 SE2d 594) (1961). The presumption does not apply in this context because a defendant "is under no duty to aid the plaintiff in making out his case." *Maloy*, 127 Ga. App. at 154 (2) (a).

association when Mr. Kohler approached and began yelling at all of them about the landscaping work and how it was damaging his property. Mrs. Peteghem testified that Mr. Kohler "just kept going on and on and on in my face." She then testified as follows:

Counsel: Did he spit on you in the process?

Mrs. Van Peteghem: Not the first time he was doing it. And I asked him to step back at least three times. And I kept saying – literally my belly was touching his belly. And I said, please, step back. I'm pregnant, please step back. I don't know where any of this is coming from. I really want to try to work – I don't know what you are talking about. . . .

Counsel: Did spit land on you in this process?

Mrs. Van Peteghem: The third time . . . when he didn't step back. And then he spit on me.

Counsel: Where did it land?

Mrs. Van Peteghem: On my face. . . .

Counsel: Okay. Had you asked him more than once to backup?

Mrs. Van Peteghem: I asked him three separate times, please, back up.

11

Counsel: Did he on any of those occasions backup when you asked him?

Mrs. Van Peteghem: The first time he step[ped] once, but then as soon as he started talking it was right back in my face.

Counsel: Were you scared?

Mrs. Van Peteghem: I – yes, I was scared. . . .

Counsel: Was he raising his voice when he did it? . . .

Mrs. Van Peteghem: He was shouting, veins bulging, red in the face. I could feel his breath on my face. And just enraged . . . . And he's a big guy and in my face just frothing at the mouth and spitting on me. His hot breath on my face. Shouting that I destroyed the forest. . . .

The individual who was the president of the neighborhood homeowners' association at the time the landscaping work was performed in the Van Peteghems' backyard, and who was present at the time and location of the alleged spitting incident, also testified at trial. He testified that on that day, Mr. Kohler "was very agitated" over the landscaping work and walked into a circle of people standing outside that included himself, the county inspector, and Mrs. Van Peteghem. The former president further testified that while standing in the circle of people, Mr.

12

Kohler was "expressing his point of view" and pointed his finger at Mrs. Van Peteghem. However, the former president testified that "there [were] a number of people there during this discussion" and "[i]t wasn't like Mr. Kohler was one-on-one against [Mrs.] Van Peteghem."

Based on this record, the trial court erred in granting a directed verdict to the Van Peteghems on the battery counterclaim. To "spit" on someone simply means to eject saliva from the mouth, see http://www.merriam-webster.com/dictionary/spit, and it can be intentional or unintentional. See *Sutton v. Tacoma Sch. Dist. No. 10*, 324 P.3d 763, 767 (Wash. Ct. App. 2014) (noting that "saliva may accidentally escape the mouth when someone is yelling in the face of another person"); *Engle v. Bosco*, No. CV054006996S, 2006 Conn. Super. LEXIS 2792, at *10 (Conn. Super. Ct. Sept. 14, 2006) (no action for battery where "errant spittle landed on plaintiff" as the defendant was yelling at the plaintiff). Based on the entirety of Mrs. Van Petegham's testimony about her encounter with Mr. Kohler, it is somewhat ambiguous whether Mr. Kohler intended to spit in her face during the heated encounter, or whether errant spit accidentally landed on her face as he yelled at her. Either inference could have been drawn by the jury. Furthermore, the testimony of the former president of the homeowners' association, construed in the light most favorable to the Kohlers, could

13

have led the jury to find that Mr. Kohler was not "one-on-one against" Mrs. Van Peteghem but instead was heatedly "expressing his point of view" among a circle of people standing in the street, which would call into question whether the spitting was intentional. Accordingly, because the evidence and all reasonable inferences drawn from it did not *demand* a finding that Mr. Kohler intentionally spat on Mrs. Van Peteghem and thus committed a battery, the trial court erred in granting the motion. See *Continental Maritime Svcs.*, 275 Ga. App. at 534.

The Van Peteghems argue, however, that the trial court's grant of the motion for directed verdict on the battery counterclaim should be affirmed under the "right for any reason" rule because there was other uncontroverted evidence to support the court's determination that a battery had occurred. See generally *Sims v. G. T. Architecture Contractors Corp.*, 292 Ga. App. 94, 96 (1), n. 6 (663 SE2d 797) (2008) ("If a judgment entered pursuant to the granting of a directed verdict is right for any reason, it will be affirmed.") (citation and punctuation omitted). Specifically, the Van Peteghems contend that the evidence undisputedly showed that Mr. Kohler physically touched Mrs. Van Peteghem with his body during the spitting incident. It is certainly true that Mrs. Van Peteghem's testimony would support such a conclusion. But, as previously noted, the former president of the homeowners' association testified that

14

"there [were] a number of people there during this discussion" and "[i]t wasn't like Mr. Kohler was one-on-one against [Mrs.] Van Peteghem," which, when construed in favor of the Kohlers, could have been construed by the jury as a denial that any one-on-one physical contact occurred between Mr. Kohler and Mrs. Van Peteghem during the incident.

For these reasons, we conclude that there was at least some evidence in the record from which the jury could have found that Mr. Kohler accidentally spat on Mrs. Van Peteghem and never physically touched her during the encounter. A trial court should grant a motion for directed verdict "only where the evidence is truly clear, palpable and undisputed." *Service Merchandise v. Jackson*, 221 Ga. App. 897, 898-899 (1) (473 SE2d 209) (1996). Hence, "if there is any evidence to support the case of the nonmoving party, a directed verdict must be reversed." (Footnote omitted.) *Franklin v. Augusta Dodge*, 287 Ga. App. 818 (652 SE2d 862) (2007). We therefore must reverse the trial court's grant of the Van Peteghems' motion for a directed verdict on the battery counterclaim against Mr. Kohler and remand for a new trial on that specific claim.

2. The Kohlers also argue that the trial court erred in charging the jury that Mr. "Kohler's action of spitting on Mrs. . . . Van Peteghem constituted a battery under the

15

laws of Georgia." The Kohlers further argue that the charge on the spitting incident was so "incendiary" that it poisoned the jury's deliberations, necessitating the grant of a new trial on all of the claims and counterclaims raised in the case.

We agree with the Kohlers that the trial court's jury charge was erroneous and that they are entitled to a new trial on the Van Peteghems' battery counterclaim for the reasons we articulated supra in Division 1. However, we do not believe that the charge was so "incendiary" as to require a new trial on the remaining claims and counterclaims. With the consent of the parties, the trial court submitted a special verdict form to the jury which required it to consider and allocate damages separately for each of the claims and counterclaims. Under these circumstances, we cannot say that the jury's verdict on any other claim or counterclaim was tainted by the trial court's charge on the battery counterclaim. See *Grant v. Hart*, 197 Ga. 662, 673 (3) (30 SE2d 271) (1944) (when the trial court givens an erroneous jury charge and the jury returns a special verdict answering specific questions, a new trial may be granted only as to the specific questions that were connected with and affected by the charge).

3. The Kohlers also contend that the trial court abused its discretion in granting the Van Peteghems' motion in limine to excluded Adam Hazell from testifying as an

16

expert based on the Kohlers' failure to comply with the expert deadlines imposed by the Discovery Order. We are unpersuaded.

The imposition of scheduling deadlines for the identification of experts, and questions regarding the admission or exclusion of expert testimony, are left to the broad discretion of the trial court. See *Caswell v. Caswell*, 285 Ga. 277, 280 (3) (675 SE2d 19) (2009); *Agri-Cycle LLC v. Couch*, 284 Ga. 90, 93 (5) (663 SE2d 175) (2008); *Vaughn v. Wellstar Health Sys.*, 304 Ga. App. 596, 601-602 (3) (696 SE2d 506) (2010). And we have held that a trial court may exercise its discretion and exclude testimony from an expert not properly identified by a party, when done in violation of an express court order. See *Collins v. Dickman*, 295 Ga. App. 601, 603-604 (1) (672 SE2d 433) (2008). See also *Kroger Co. v. Walters*, 319 Ga. App. 52, 60 (2) (b) (735 SE2d 99) (2012) (noting that "[i]n a civil suit it is an abuse of discretion to exclude a relevant witness solely on the ground that the witness was not identified during discovery or in a timely manner," *unless* the failure to properly identify the witness was in "violation of an express court order").

Here, the Discovery Order expressly required the Kohlers to identify any experts to be used at trial by July 30, 2011, and make them available for deposition by October 15, 2011. Yet, the Kohlers did not identify Mr. Hazell as an expert until

17

November 16, 2012, more than 16 months after the expert deadline and three weeks before the specially set trial. Moreover, the Kohlers failed to provide any information about Mr. Hazell's expected testimony until Saturday, December 8, 2012, two days before trial. Given these circumstances, the trial court did not abuse its discretion in excluding Mr. Hazell's testimony for violations of the express deadlines contained in the Discovery Order. See *Collins*, 295 Ga. App. at 603-604 (1).

The Kohlers, however, emphasize that the Discovery Order was entered on July 27, 2011, and thus gave them "a scant two business days" to identify any experts since July 30, 2011 fell on a Saturday. According to the Kohlers, such a short time frame for identifying experts was unreasonable and constituted an abuse of discretion by the trial court. Their claim in this regard is without merit. The discovery period began with the timely filing of the Van Peteghems' answer on September 13, 2010, see Uniform Superior Court Rule 5.1, and thus the parties had many months to name experts before the Discovery Order was issued on July 27, 2011. Indeed, the Kohlers named a different engineer as a potential expert on November 8, 2010, nearly nine months before the trial court issued the Discovery Order. Hence, the Kohlers'

suggestion that they had too little time to identify an expert is unpersuasive, and we discern no abuse of discretion by the trial court in excluding Mr. Hazell's testimony.[5]

4. Lastly, the Kohlers contend that the trial court erred in granting the Van Peteghems' motion for a directed verdict on the Kohlers' MRPA claim. According to the Kohlers, the trial court erred in concluding that the MRPA does not create a private right of action for damages. We discern no basis for reversal.

As previously noted, the grant of a motion for directed verdict will be affirmed if right for any reason. See *Sims*, 292 Ga. App. at 96 (1), n. 6. Pretermitting whether the trial court correctly concluded that the MRPA does not create a private right of action for damages, we affirm the trial court's directed verdict on the MRPA claim because the Kohlers failed to present evidence sufficient to show that the Van Peteghems' landscaping work violated the MRPA.

---

[5] The Kohlers also argue that the trial court abused its discretion by including the provision in the Discovery Order that, except in emergency situations, prohibited the parties, other than through their attorneys, from contacting third parties "for the purpose of making or investigating any complaint or alleged issue or condition on either of the properties at issue in this case or any party to this case." Even if the trial court's inclusion of this prohibition in the Discovery Order was improper (a question we need not resolve), the Kohlers have failed to show that they suffered any harm by virtue of the prohibition and thus cannot demonstrate any basis for reversal. See *Gropper v. STO Corp.*, 276 Ga. App. 272, 277 (2) (623 SE2d 175) (2005) ("Reversal requires a showing of harm as well as error[.]").

19

In enacting the MRPA, OCGA § 12-5-440 et seq., the General Assembly intended to create a statutory and regulatory framework that would protect "major streams in certain metropolitan areas" from pollution, erosion, and over-intensive development, among other problems. OCGA § 12-5-442 (a).[6] To that end, regional commissions that have been established for the aforementioned metropolitan areas are charged with the preparation and adoption of "comprehensive, coordinated land and water use plans" for "stream corridor[s]." OCGA § 12-5-443 (1); *Pope v. City of Atlanta*, 242 Ga. 331 (249 SE2d 16) (1978). A "stream corridor" includes "all land in the area in the watercourse, within 2,000 feet of the watercourse, or within the flood plain, whichever is greater." OCGA § 12-5-441 (17).

The MRPA imposes different restrictions on development in an area that is part of a stream corridor depending on whether a land and water use plan has been adopted by the regional commission. See OCGA § 12-5-444 (a), (b). Once a regional commission has adopted a plan, it is unlawful to engage in any "land-disturbing

---

[6] The MRPA defines a metropolitan "area" as an area "having a population of more than 1,000,000," OCGA § 12-5-441 (2), and it defines a "major stream" as "any stream or river, whether navigable or nonnavigable, which flows through any area and which is the source of at least 40 percent of the public water supply of any such area." OCGA § 12-5-441 (11).

20

activity" incompatible or inconsistent with the plan,[7] and anyone who intends to conduct such activity must first obtain a certificate for the proposed use from the appropriate local governing authority. See OCGA § 12-5-444 (b) (1).

Here, the Kohlers presented no evidence regarding whether a land and water use plan had been adopted by a regional commission covering the area of the Chattahoochee River in question or the requirements under such a plan. Nor did the Kohlers present any evidence regarding whether the Van Peteghems had failed to comply with any specific plan requirements or with the appropriate certification process in carrying out their landscaping work. Indeed, counsel for the Kohlers conceded at the hearing on their motion for new trial that the excluded expert testimony of Mr. Hazell, a representative of the Georgia Mountains Regional Commission, would have been necessary for establishing that the Van Peteghems violated the MRPA. As counsel noted, "Ms. Kohler couldn't do it," and she was the only witness who testified in the Kohlers' case-in-chief. Consequently, we conclude that the Kohlers failed to present evidence sufficient to show a violation of the

---

[7] "'Land-disturbing activity' means scraping, plowing, clearing, dredging, grading, excavating, transporting, or filling of land or placement of any structure or impervious surface, dam, obstruction, or deposit." OCGA § 12-5-441 (10).

21

MRPA, and that the trial court's grant of a directed verdict to the Van Peteghems on that claim was appropriate.

*Judgment affirmed in part, reversed in part, and case remanded with instruction. Boggs and Branch, JJ., concur.*