**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 15, 2018**

# In the Court of Appeals of Georgia

A18A0302.  KING  v.  GEORGIA  DEPARTMENT  OF
CORRECTIONS.

MERCIER, Judge.

Augustus King sued the Georgia Department of Corrections ("the Department") for negligence after his hand was injured at the Whitworth Parole Revocation Center ("Whitworth"). The trial court directed a verdict for the Department following the close of evidence at trial. King appeals, and we reverse.

A trial court may direct a verdict "only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." *Kohler v. Van Peteghem*, 330 Ga. App. 230, 234 (1) (767 SE2d 775) (2014) (citation omitted). Where *any* evidence – even slight evidence – supports the opposing party's case, a directed verdict is improper.

See id. at 237 (1). We review the grant of a motion for directed verdict de novo, construing the evidence in favor of the nonmovant. See id. at 234 (1).

So viewed, the evidence shows that following a parole violation in 2008, King was incarcerated at Whitworth, which offered a six-month program for parole violators as an alternative to returning to the state penitentiary. Through the program, Whitworth inmates received education, counseling, and on-the-job training at the facility. Inmates who successfully completed the six-month program were released back on parole.

King, who had previously been employed in the food service industry, was assigned to work in Whitworth's kitchen. In his prior employment, King had used various types of kitchen equipment, including a slicer known as a "Hobart machine." The Whitworth kitchen staff confirmed King's experience with the Hobart machine, then showed him how to use it to slice vegetables and cheese. Without dispute, a warning label affixed to the Hobart machine stated: "Rotating knives inside. Always use food pusher. Keep hands out."

On March 27, 2008, King's kitchen supervisor, Bonnie Hubbard, instructed him to "pack [liver] into the [Hobart] machine to grind into giblets for the meal for the day." King expressed concern to Hubbard that the Hobart machine was not intended to grind meat and that the machine's safety "food press" was missing. Hubbard told

2

him not to question her authority and to do as instructed. King believed that he had no choice but to comply with Hubbard's orders because "not following direction with her leads to trouble." As he explained:

> [I]f you fight, if you get any disciplinary form put on you one time, [you] go to state prison. You get kicked out of the [Whitworth] program. It was zero tolerance on not performing no duties whether detail, listening to staff. It was straight disciplinary action.

King packed the liver into the Hobart machine's loading chute, holding the meat in place by hand because the safety food press that pushes food toward the slicing blades was not attached to the machine. At some point, the blades snagged the glove King was wearing, pulling his left hand into the chute and slicing off the tips of two fingers. Following the incident, King underwent surgery on his hand and spent two days in the hospital.

King sued the Department for negligence, alleging that the Department and Hubbard, its employee, failed to exercise ordinary care for his safety. The case proceeded to trial, and the Department moved for a directed verdict at the close of King's case. The trial court initially denied the motion. After the Department presented

its evidence, however, the trial court granted a renewed defense motion for directed verdict, stating:

> I think I've changed my mind. There was a warning on the machine. [King] signed the document that he was familiar with operation of the machine. He testified that he had worked in the kitchen and used this machine before. I think it's clear and obvious that if you stick your hand in a machine with sharp blades turning, that that is a dangerous move. I think it's clear now from the testimony that the press or flap or whatever you want to call it can't be detached. It's attached to the machine. And it's there for a reason. And I further find that there's no – nothing from which the Jury could find proof of damages. So I will grant the Motion for Defendant's verdict.

King argues that the trial court erred in directing a verdict for the Department because the evidence presented questions of fact for the jury as to negligence and damages. We agree.

1. Although King's testimony was confusing at times, he clearly stated that (1) the safety food press was not attached to the Hobart machine when Hubbard instructed him to grind the liver; (2) he told Hubbard about the missing piece; and (3) she ordered him to grind the liver despite its absence. The Department disputed this testimony, offering competing evidence that the safety device was in place. But King's

testimony raised a jury question as to whether the Department, through Hubbard, negligently required King to use a machine without the appropriate safety equipment. See *Currid v. DeKalb State Court Probation Dept.*, 274 Ga. App. 704, 709 (2) (a) (618 SE2d 621) (2005) (evidence that county failed to give appropriate safety equipment to probationer who was completing community service raised issues of fact as to county's gross negligence). Accordingly, the trial court erred by concluding, as a matter of law, that the safety food press was attached to the Hobart machine at the time of King's injury. See *Chrysler Group v. Walden*, 339 Ga. App. 733, 735 (1) (792 SE2d 754) (2016) ("A motion for directed verdict should not be granted where there exists even slight material issues of fact, because the trial court is substituting its judgment for the jury's."), aff'd, 303 Ga. 358 (812 SE2d 244) (2018).

2. In granting the directed verdict motion, the trial court further found that King knew how to operate the Hobart machine and was aware of its dangers, but nevertheless placed his hand in the machine. Essentially, the trial court determined, and the Department argues on appeal, that King's own negligence caused his injury and/or he assumed the risk of danger presented by the Hobart machine.

Pursuant to OCGA § 51-12-33 (g), a plaintiff "shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages

5

claimed." The plaintiff assumes the risk of his own injuries and is likewise barred from recovery if he "(1) had actual knowledge of the danger, (2) understood and appreciated the risk[], and (3) voluntarily exposed himself to that risk." *North Ga. Elec. Membership Corp. v. Webb*, 246 Ga. App. 316, 319 (2) (540 SE2d 271) (2000) (footnote omitted). "Except in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached," the jury must determine whether a claimant exercised ordinary care for his own safety or assumed the risk of injury. Id. (footnote omitted). See also *Baker v. Harcon, Inc.*, 303 Ga. App. 749, 753-754 (a) (ii) (694 SE2d 673) (2010).

As noted by the trial court, the evidence showed that King had previously used a Hobart machine, and the Whitworth machine was equipped with a warning label. But King testified that he questioned Hubbard's instructions when he realized the safety food press was missing from the machine. Hubbard ordered him to use the machine to grind liver despite his concerns, and he felt compelled to cede to her authority. Construed favorably to King, such evidence raised a question of fact as to whether he faced the "untenable choice" of using the Hobart machine without safety features or risking what he feared would be harsh disciplinary action. *Travis v. QuikTrip Corp.*, 339 Ga. App. 551, 556 (1) (794 SE2d 195) (2016) (gasoline tanker driver who was

6

struck by motorist at gas station faced "untenable choice" of completing delivery tasks within the flow of vehicle traffic as employer required or risking loss of his job).

In light of these circumstances, the jury – not the trial court – was required to determine whether King acted unreasonably and/or voluntarily exposed himself to the risk presented by the machine. See id. ("[W]e cannot say as a matter of law that [tanker driver's] conduct in placing himself in the Tank Area was unreasonable or that he voluntarily assumed the risk of the traffic flow."). Although the Department offered evidence that it would not have disciplined King for refusing to follow Hubbard's instructions, questions of fact remained. See *York v. Winn Dixie*, 217 Ga. App. 839, 841 (459 SE2d 470) (1995) ("We were inclined to agree with the employee . . . that because the employee was acting under orders from his employer, his conduct cannot be characterized as unreasonable as a matter of law.") (citation and punctuation omitted). The Department was not entitled to a directed verdict based on King's alleged negligence or assumption of the risk. See *Travis*, supra; *North Ga. Elec. Membership Corp.*, supra at 319-320 (2).

(c) Finally, the trial court found that King failed to prove damages. We recognize that King presented no evidence documenting medical expenses he may have incurred as a result of the incident. But his testimony established that two of his

7

fingertips were severed by the Hobart machine, the injury has limited his ability to move those fingers, and he has experienced on-going pain since the injury. King also asserted that his injury-related limitations prevented him from obtaining a higher paying job when he was released from Whitworth, and he described how the injury has adversely affected his family life.

The Department argues on appeal that King offered no "method for calculating the amount of the loss that he allegedly suffered with any reasonable degree of certainty." King, however, specifically sought recovery for past, present, and future pain and suffering in his complaint. And "[t]here exists no rule or yardstick against which damages for pain and suffering are to be measured." *AT Sys. Southeast v. Carnes*, 272 Ga. App. 671, 672 (1) (613 SE2d 150) (2005). Such damages are determined "by the enlightened conscience of a fair and impartial jury." Id. Given the evidence presented, including testimony about King's loss of fingertips, the pain he has experienced, and the impact on his life, a directed verdict on the issue of damages was improper. See *Beam v. Kingsley*, 255 Ga. App. 715, 716-717 (1) (566 SE2d 437) (2002) (evidence that claimant's decedent was aware of impending collision, suffered injuries, survived for a brief period after the crash, and could be heard gasping for breath, supported a damages award for pain and suffering); *Dodson v. Cobb*, 92 Ga.

8

App. 654, 655 (89 SE2d 552) (1955) ("The law infers bodily pain and suffering from personal injury, and loss of time from the disabling effect thereof.") (citation and punctuation omitted).

*Judgment reversed. Dillard, C. J., and Doyle, P. J., concur.*