**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 28, 2019**

# In the Court of Appeals of Georgia

A19A0049. RIVERS v. SOUTH AUCTION AND REALTY et al.     DO-002

DOYLE, Presiding Judge.

Melissa Ann Rivers signed a contract to purchase a house from Jeff Powell after entering the winning bid in an auction run by South Auction Realty ("SAR"). After a dispute about the condition of the property, Rivers sought to cancel the contract and obtain a refund of her earnest money. With the dispute unresolved and the property sold to another party, the attorney holding the earnest money in escrow filed a complaint for interpleader to determine how to dispose of the earnest money.[1] Following a trial, a jury determined that Rivers was entitled to cancel and receive a refund of her earnest money, but the trial court granted a motion for a directed verdict in favor of defendants SAR and Powell. Rivers now appeals, contending that the trial

---

[1] Rivers also filed various crossclaims against SAR and Powell.

court erred by (1) granting partial summary judgment to SAR, (2) directing a defense verdict by erroneously construing the purchase agreement and ignoring the evidence supporting a finding that her contractual right to cancel was triggered, (3) making certain evidentiary rulings, and (4) denying her motion for attorney fees and awarding fees to SAR.[2] For the reasons that follow, we affirm the trial court's ruling with respect to attorney fees and SAR's liability, and we reverse the trial court's grant of the directed verdict as to Rivers's right to cancel and receive a refund of her earnest money.

> A directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict. In reviewing the grant of a motion for a directed verdict, this Court applies the 'any evidence' test and construes the evidence in the light most favorable to the losing party.[3]

---

[2] We have endeavored to address the merits of Rivers's arguments properly made in her appellate brief. See generally *Howard v. State*, 340 Ga. App. 133, 139-140 (3) (a) (796 SE2d 757) (2017) ("[U]nder the rules of this Court, an appellant must support enumerations of error with argument and citation of authority."); *Bryant v. BMC of Ga.*, 188 Ga. App. 124, 125 (372 SE2d 280) (1988) ("This [C]ourt has no jurisdiction to consider grounds which are not enumerated as error according to OCGA § 5-6-40.") (punctuation omitted).

[3] (Citations and punctuation omitted.) *Law v. Chemtall, Inc.*, 342 Ga. App. 374, 375 (802 SE2d 408) (2017).

The record shows that in July 2015, Powell hired SAR to auction a residential property he owned. An auction was held with an open house on a weekend and the end-date on the following Thursday, September 10, 2015. Rivers went to the open house and inspected the house for approximately one hour. She decided to bid on the house, ultimately entered into a contract for a total bid of $356,400, and paid $71,280 in earnest money to be held by the closing attorney, Christy Balbo. Rivers testified that at the time of her inspection, she observed that the house was "very nice," and all of the systems appeared to be in working order, including the upstairs air conditioning unit.

The purchase contract specified that the transaction would close on or before October 9, 2015, with an option for the seller to extend the closing date by 30 days. It also contained the following provision regarding the condition of the property:

> Seller warrants that when the sale is consummated the improvements on the Property will be in the same condition as on the date hereof [September 10, 2015], normal wear and tear accepted [sic]. However, should the premises be destroyed or substantially damaged[4] before the contract is consummated, then at the election of the Purchaser: (a) the contract may be cancelled, or (b) Purchaser may consummate the contract and receive such insurance proceeds as may be paid on the

---

[4] This term is not defined in the contract.

3

claim of loss. This election is to be exercised within ten (10) days after the amount of Seller's damage is determined.

The contract also contained a provision whereby the parties indemnified and held harmless SAR for any liabilities or losses including attorney fees and released SAR from any claims regarding the earnest money.

When Rivers returned to the property with Rusty Lane (the SAR proprietor) and Balbo to confirm the condition of the house on September 24, 2015, she observed that a several-foot long section of the kitchen's tile backsplash was "broken off and beat up. The tiles themselves were broken off and cracked up. It was obvious that it was excessive force because there were blunt points as though a hammer or something had hit them." Also, Rivers noticed that the thermostat for the upstairs heating and air conditioning "was off the wall[,] and the coils or wires were all yanked out of the wall." The power was not turned on, so she could not assess the functionality of the air conditioning. She also observed that a tree in the front yard may have been struck by lightning.

That same day, Balbo sent a letter to SAR and Powell, expressing Rivers's concerns and requesting that the backsplash be repaired, the power be restored, and

any electrical damage be remedied. The letter also reserved Rivers's right to cancel the contract if the repairs were not made.

On September 29, Balbo sent another letter stating Rivers's intention to cancel the contract in light of the issues she observed. Rivers had engaged a heating and air contractor to assess the dismantled thermostat, learning that "[a]ccording to the professionals, this is something you typically see when someone intends to damage the unit, or 'rough start' a faulty system." In light of the changed condition of the property, Rivers explained that she did not wish to proceed with the closing and requested a refund of her earnest money.

The parties continued to discuss the issues, endeavoring to close the deal within 30 days after the original closing date. Some repairs were allegedly made, and Rivers agreed to visit the house with a local real estate agent a third time on October 27, 2015, to assess the condition of the house. The power was not turned on despite Rivers's request, and she noticed that water was leaking from the ceiling of the main floor. The water was coming from a leak in an upstairs bathroom and had soaked through the floor, collecting in the seams in the downstairs ceiling drywall and dripping from a light fixture onto the downstairs floor. The house had been locked and unoccupied while the leak was active, and it was impossible to determine exactly

5

how long the water had been leaking. The real estate agent was able to turn off the water supply to the upstairs toilet, which stopped the leak.

Further, after the agent was able to turn on the power to the house, Rivers determined that the upstairs air conditioning was not operational even though it had been at the time she placed her bid. The kitchen backsplash tile was never fixed.

The closing never occurred,[5] and SAR and Powell disputed Rivers's entitlement to cancel the contract. In November 2015, Balbo interpleaded the earnest money into the trial court's registry, seeking a ruling on who was entitled to it. Rivers answered and filed crossclaims against Lane, SAR, and Powell, including breach of contract and fraud. The parties moved for summary judgment, and the trial court denied Rivers's motion and partially granted SAR's motion to the extent that the parties had waived any claims against SAR in connection with the earnest money. Lane later was dismissed as a party under corporate law theories.

A three-day jury trial ensued, and at the close of Rivers's evidence, SAR and Powell moved for a directed verdict. The trial court deferred ruling at that time, and after hearing the defense's evidence, the jury deliberated and found that substantial damage had occurred after the contract was signed so Rivers was entitled to cancel

---

[5] The property was ultimately sold to another buyer in November 2015.

6

and receive a refund of her earnest money. The trial court ultimately granted a directed verdict to the defendants, denied a request by Rivers for attorney fees from SAR under OCGA § 13-6-11, and granted SAR's request for attorney fees from the parties pursuant to the contract. Rivers now appeals.

1. Rivers contends that the trial court erred by granting partial summary judgment to SAR because, according to Rivers, the contract indemnified SAR for any breach by the buyer or seller, but not for any harm caused by SAR or Lane (SAR's proprietor). Nevertheless, this argument fails in light of the following contractual language: "[T]he parties hereto release and discharge [SAR] from any claims against [SAR] related to the earnest money *and shall not seek damages from [SAR] by reason thereof or by reason of any other matter arising out of this contract or the transaction contemplated hereunder*." It is undisputed that all of the claims Rivers alleged against SAR arose out of conduct related to the sale of the home — there is no allegation of a tort or breach of contract separate and apart from the sale of the home. Therefore, the argument urged by Rivers on appeal fails.

2. Rivers contends that the trial court erred by construing the purchase agreement and trial evidence to conclude that the defendants were entitled to a directed verdict. We agree.

7

As noted above, "[a] trial court may direct a verdict only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict,"[6] i.e. that there was no substantial damage to the house after Rivers signed the purchase agreement. "Where *any* evidence — even slight evidence — supports the opposing party's case, a directed verdict is improper. We review the grant of a motion for directed verdict de novo, construing the evidence in favor of the nonmovant,"[7] i.e., Rivers.

Here, the contract provided that

Seller warrants that when the sale is consummated the improvements on the Property will be in the same condition as on the date hereof [September 10, 2015], normal wear and tear accepted [sic]. However, should the premises be destroyed or substantially damaged before the contract is consummated, then [Rivers was entitled to cancel and obtain a refund of her earnest money].

The contract language itself is plain enough, and the issue presented by the evidence and argument in this case requires no in-depth exercise of contractual construction. The question before the jury was whether the property became "substantially

---

[6] (Punctuation omitted.) *King v. Ga. Dept. of Corrections*, 347 Ga. App. 606 (820 SE2d 445) (2018).

[7] (Citation omitted, emphasis in original.) Id.

damaged" beyond "normal wear and tear" before the closing. Indeed, at the end of the trial, the parties agreed to a verdict form that boiled down the entire case to one of two options: "the property was substantially damaged after September 10, 2015 . . . or the property did not have substantial damage after September 10, 2015. . . ."[8]

Here, there was evidence that when Rivers first inspected the property around the time she signed the purchase agreement, "the house itself was very nice" and did not have any of the damage complained of. Later, Rivers observed that the house had sustained damage to the kitchen backsplash, which damage Rivers described as a result of blunt force (not typical cracking due to age or wear) ; a faulty thermostat possibly indicating damage to the air conditioning unit itself ; and water damage from an upstairs leak of undetermined duration. The water leak was described as "a big mess," and photographs showed that water had pooled across the bathroom floor, soaked through the bathroom floor into the downstairs ceiling, drained through the seams in the drywall and into at least one light fixture, and was actively dripping

---

[8] The verdict form did not address any additional issues that may have been raised in Rivers's crossclaims. She did not challenge the verdict form in the trial court nor does she on appeal. See generally *Milum v. Banks*, 283 Ga. App. 864, 870 (2) (642 SE2d 892) (2007) ("[I]n the absence of a specific and timely objection, a party waives error relating to the manner in which questions are submitted to the jury.") (punctuation omitted).

down onto the downstairs floor when Rivers observed it. Despite some personal opinion testimony by a defense witness minimizing this damage, we, like the trial court, are required to construe the evidence in favor of Rivers as the party opposing the motion for a directed verdict.[9]

> When there is opinion evidence, circumstantial evidence, presumptions of fact, or evidence subject to more than one reasonable construction, the appellate courts shall carefully scrutinize the grant of a directed verdict, because such evidence may be construed as providing the "any evidence" creating a jury question.[10]

Based on the record before us, the evidence, when viewed in the appropriate light, presented a jury question as to a finding of substantial damage. Accordingly, the jury was authorized to find, as it did, that the property was "substantially damaged," and the trial court erred by granting the directed verdict in favor of the defendants on that question.

3. Rivers also challenges the trial court's ruling as to certain evidentiary rulings. This evidence went to the substance of Rivers's case regarding the damage

---

[9] See *King*, 347 Ga. App. at 606.

[10] (Punctuation omitted.) *Miller v. Lynch*, __ Ga. App. __, __ (1) (Case No. A19A0005, decided June 21, 2019), quoting *Canton Plaza, Inc. v. Regions Bank, Inc.*, 315 Ga. App. 303, 303-304 (732 SE2d 449) (2012).

to the property. In light of our holding in Division 2, above, these enumerations are moot.

4. Finally, Rivers challenges (a) the denial of her motion for an attorney fee award under OCGA § 13-6-11 and (b) the award of attorney fees to SAR from the parties based on the contract. We find no reversible error.

(a) An award of attorney fees under OCGA § 13-6-11 is predicated on the party's conduct in the underlying transaction.[11] On appeal, Rivers essentially takes issue with the trial court's finding that she failed to show that the defendants "acted in bad faith, [were] subbornly litigious, or . . . caused [her] unnecessary trouble and expense."[12] In this case, such questions were for the trial court, which acted as the factfinder on this issue pursuant to the parties' stipulation.[13]

It is well settled that "mere refusal to pay a disputed claim is not the equivalent of stubborn litigiousness or causing unnecessary trouble and expense as contemplated

---

[11] See *Trotter v. Summerour*, 273 Ga. App. 263, 267 (2) (614 SE2d 887) (2005).

[12] OCGA § 13-6-11.

[13] See generally *The Spring Lake Property Owners Assn. v. Peacock*, 260 Ga. 80, 81 (390 SE2d 31) (1990).

under the statute. The key is whether a bona fide controversy exi[s]ts."[14] Here, there was evidence on both sides of the question regarding the nature of the damage to the house, and indeed, the jury's verdict and the trial court's view to the contrary bears that out. Further, it is undisputed that the seller attempted to make some repairs and did extend the closing date to allow the parties to avoid cancelling the closing. Based on the record in this case, the trial court was authorized to find a lack of evidence of conduct by the defendants during the transaction that would support an attorney fee award under OCGA § 13-6-11.[15]

(b) Rivers next argues that SAR is not entitled to an award of attorney fees under OCGA §§ 13-6-11 or 9-15-14, but this overlooks the fact that the trial court's award was made pursuant to the contract, not those Code sections. As correctly noted by the trial court, the relevant contractual language provides as follows:

> Both Buyer and Seller shall indemnify SAR for and hold harmless SAR from any costs, losses, liabilities, or expenses, including attorney fees resulting from SAR being named as a party to any legal action resulting from either the Buyer's or Seller's failure to fulfill any obligations and undertakings as set forth in this Contract.

---

[14] (Citation and punctuation omitted.) *Rivergate Corp. v. Atlanta Indoor Advertising Concepts*, 210 Ga. App. 501, 504 (4) (436 SE2d 697) (1993).

[15] See id.

The fees awarded by the trial court were incurred by SAR as a result of being named in the interpleader action and in Rivers's crossclaims based on Powell's (the seller's) failure to cancel the contract and return Rivers's earnest money after the property was substantially damaged. Under this scenario, the trial court correctly held that the contractual indemnity provision was triggered, and the parties were obligated to indemnify SAR for its losses "including attorney fees" incurred in this action. Accordingly, this enumeration presents no basis for reversal.

*Judgment affirmed in part and reversed in part. Coomer and Markle, JJ., concur.*