**WHOLE COURT**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A0802. MOORE et al. v. COTTRELL, INC.                    DO-056

DOYLE, Chief Judge.

Dennis and Lisa Moore filed this action to recover for injuries Dennis received in a fall from the top level of a car hauler manufactured by Cottrell, Inc. The Moores appeal the trial court's orders striking their experts and granting summary judgment to Cottrell. We affirm for the reasons that follow.

On April 1, 2008, Dennis, a car hauler driver for Waggoners Trucking Company, went to the Nissan North American facility in Canton, Mississippi, to pick up a load of new vehicles. The car hauler was equipped with a "head ramp," which held three vehicles over the truck cab, and was attached to a two-level trailer. The car hauler included a portable, non-affixed ladder, which could be moved from the driver's side to the passenger's side of the car hauler and was located at the rear of

the head ramp. It was raining, and the car hauler was wet. Dennis backed the first vehicle onto the head ramp of the car hauler (into the position farthest forward and over the cab and hood of his tractor-trailer rig), exited the vehicle on the passenger side of the car hauler, walked past the first vehicle, and walked down the ramps to the ground in lieu of using the ladder. He then drove a Nissan Armada (a large SUV) into the second position on the head ramp, exited from the driver's door on the driver's side of the car hauler, and turned to face the SUV, intending to step onto the wider ramp at the back of the SUV upon which the tires are driven and walk down the ramp to the ground. While balanced on the frame of the head ramp, which was not equipped with guard rails or handholds, Dennis attempted to maintain a three-point stance by grasping the roof of the Armada with his fingers as he inched along the rail of the head ramp towards the back of the SUV. As he approached the rear tire of the Armada, Dennis lost his footing and fell to the ground, sustaining serious injuries.

In a subsequent affidavit, Dennis explained that the car hauler did not contain a ladder built in the frame of the head ramp. Instead, it had a portable, aluminum ladder, which did not have a mechanism for securing the top of it, and because it did not have rubber coated bottoms or "flippers," it "could only be used safely if the bottom of the ladder was resting on dirt and could be pushed into the ground far

2

enough to hold it in place."[1] Dennis did not attempt to climb down the portable ladder because at the time of his fall, the car hauler was located on an asphalt parking lot. As a result, he believed he had no other option than to try to maneuver around the Armada to reach the ramp.

Dennis and his wife, Lisa, sued Cottrell, asserting claims for strict liability, negligence, and breach of warranty. The Moores alleged that the Cottrell car hauler (specifically, the head ramp) was defective and not equipped with a safe means for him to descend to the ground, specifically challenging the lack of a reasonably safe ladder, a guardrail or other similar safety system, or handholds. On August 18, 2011, the trial court entered a consent case management order, providing that discovery would end on April 1, 2012, requiring the Moores to disclose their experts no later than December 1, 2011, and make the experts available for deposition no later than January 1, 2012, and requiring the parties to file dispositive motions no later than May 1, 2012.

---

[1] After Dennis's accident, Cottrell began using a system that includes hooks at the top of the portable ladders that fit into slots in the upper deck of the head ramp, firmly securing the ladder.

On May 8, 2012, Cottrell filed a motion to exclude the testimony of the Moores's expert, Dr. Harvey Cohen, under *Daubert*.[2] On December 20, 2013, following a hearing, the trial court granted Cottrell's motion and excluded Dr. Cohen's testimony, finding that although he was qualified to testify as in expert in "safety issues relating to falls," he failed to apply "reliable principles or methods to this case." On January 8, 2014, Cottrell moved for summary judgment, and the trial court scheduled a hearing on the motion for May 20, 2014. On May 16, 2014, in opposition to the summary judgment motion, the Moores filed the affidavit of another expert, John S. Morse, Ph.D., P.E. Following the hearing, which was not transcribed, the trial court entered an order striking Dr. Morse's affidavit as untimely and granting summary judgment to Cottrell.[3] This appeal followed.

1. The Moores argue that the trial court erred by striking Dr. Cohen's expert testimony. We disagree.

OCGA § 24-7-702 (b) provides:

---

[2] *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993).

[3] In the order, however, the trial court noted summary judgment would be proper even if it had not stricken Dr. Morse's affidavit.

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

"This standard is based upon Federal Rule of Evidence 702, and it requires a trial court to sit as a gatekeeper and assess the reliability of proposed expert testimony, applying the principles identified in *Daubert* and its progeny."[4] "The determination of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion."[5]

"In determining the admissibility of expert testimony, the trial court . . . assess[es] both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony.

---

[4] (Citations and punctuation omitted.) *Dubois v. Brantley*, 297 Ga. 575, 580 (2) (775 SE2d 512) (2015).

[5] (Punctuation omitted.) *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. 641, 642 (1) (697 SE2d 770) (2010).

Reliability is examined through consideration of many factors, including whether a theory or technique can be tested, whether it has been subjected to peer review and publication, the known or potential rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training.[6]

Applying these principles to this case, we conclude that the trial court did not abuse its discretion by finding Dr. Cohen's testimony inadmissible. In his report attached to his deposition, Dr. Cohen opined that the car hauler from which Dennis fell was "defective and unreasonably dangerous from a human systems safety perspective," explaining that (1) the design of the car hauler did not include a "continuous and stable [three]-points of contact, . . . guardrails, handholds, or sufficiently wide catwalks"; (2) the car hauler did not include adequate warning labels; and (3) Cottrell failed to provide adequate safety instructions in the operator's manual.[7] Dr. Cohen admitted at his deposition, however, that he never inspected or even saw the car hauler in this case nor had he been on the upper deck of any vehicle transport trailer. Dr. Cohen did not offer his opinion regarding the actual cause of

---

[6] (Citations omitted.) Id., citing *Kumho Tire Co. v. Carmichael*, 526 U. S. 137, 141 (119 SCt 1167, 143 LE2d 238) (1999).

[7] (Emphasis omitted.)

Dennis's fall, and he conceded that he has never inspected any fall protection designs or systems for similar car haulers, was unaware of their components or composition, and has never been subject to peer review on these theories nor completed any scientific testing to support them.

Because Dr. Cohen's opinion was not the product of reliable principles or methods, he did not inspect the car hauler at issue in this case, it is unclear what analysis he applied, and he does not have an opinion regarding proximate cause, his testimony does not meet the requirements of OCGA § 24-7-702 (b). Under these circumstances, the trial court did not abuse its discretion by excluding Dr. Cohen's testimony.[8]

2. The Moores contend that the trial court abused its discretion by striking Dr. Morse's affidavit. Again, we disagree.

> The imposition of scheduling deadlines for the identification of experts, and questions regarding the admission or exclusion of expert testimony, are left to the broad discretion of the trial court. And we have held that a trial court may exercise its discretion and exclude testimony

---

[8] See *Butler v. Union Carbide Corp.*, 310 Ga. App. 21, 25-30 (1) (712 SE2d 537) (2015).

from an expert not properly identified by a party, when done in violation of an express court order.[9]

Here, the scheduling order expressly required the Moores to identify any experts on or before December 1, 2011. Instead, the Moores did not identify Dr. Morse as an expert until May 16, 2014, four days before the summary judgment motion hearing. Under these circumstances, the trial court did not abuse its discretion by striking Dr. Morse's affidavit.[10]

3. The Moores also argue that the trial court erred by granting summary judgment to Cottrell.

Summary judgment is appropriate when no genuine issues of material fact remain and the evidence, construed in the light most

---

[9] (Citations omitted.) *Kohler v. Van Peteghem*, 330 Ga. App. 230, 238 (3) (767 SE2d 775) (2014), citing *Caswell v. Caswell*, 285 Ga. 277, 280 (3) (675 SE2d 19) (2009); *Agri-Cycle LLC v. Couch*, 284 Ga. 90, 93 (5) (663 SE2d 175) (2008); *Vaughan v. Wellstar Health Sys.*, 304 Ga. App. 596, 601-602 (3) (696 SE2d 506) (2010); *Collins v. Dickman*, 295 Ga. App. 601, 603-604 (1) (672 SE2d 433) (2008).

[10] See *Kohler*, 330 Ga. App. at 239 (3). We are unpersuaded by the Moores's argument that OCGA § 9-11-6 (d), which permits parties to file affidavits opposing summary judgment no later than one day before the date of the hearing, renders unenforceable the trial court's express order regarding the deadline for identification of experts.

8

favorable to the nonmoving party, warrants judgment as a matter of law. A defendant may obtain summary judgment by showing that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. We review a grant of summary judgment de novo.[11]

(a) *Design Defect Claims.* To properly determine whether the Moores's design defect claims can proceed in the absence of their experts' testimony, we must determine whether Georgia or Mississippi law applies.[12]

Georgia's choice-of-law rules provide the key for resolving this claim of error. Under lex loci delicti, tort cases are governed by the substantive law of the state where the tort or wrong occurred – in this case, [Mississippi]. Questions involving procedure or the appropriate remedy, however, are decided using the law of the state where the action was filed.[13]

The determination of whether the Moores are required to provide competent expert testimony to support their claims requires an analysis of proof of causation, which is

---

[11] (Citations and punctuation omitted.) *Butler*, 310 Ga. App. at 30 (2), quoting *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). See also OCGA § 9-11-56 (c).

[12] The trial court analyzed the issue of whether the Moores's claims failed without an expert under both Georgia and Mississippi law.

[13] (Footnotes omitted.) *Bagnell v. Ford Motor Co.*, 297 Ga. App. 835, 836 (1) (678 SE2d 489) (2009).

an element of the claim and therefore governed by the substantive law of Mississippi.[14]

To recover for a products liability case under the Mississippi Products Liability Act (the "MPLA"), a plaintiff

> must establish by a preponderance of the evidence that: (1) the product was manufactured or designed in a defective manner, contained inadequate warnings, or breached an express warranty that was justifiably relied on when purchased; and (2) this defective condition rendered the product unreasonably dangerous to the user or consumer; and (3) the defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought; and (4) the defective condition existed at the time the product left control of the manufacturer.[15]

The MPLA further provides:

> [T]he manufacturer . . . shall not be liable if the [plaintiff] does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer . . . (i) [t]he manufacturer . . . knew, or in light of reasonably available knowledge or in the exercise of

---

[14] See id. at 838 (2) (applying Texas law to determine whether evidence was admissible when proving causation in a failure-to-warn case because the tort occurred in Texas).

[15] *Cothren v. Baxter Healthcare Corp.*, 798 F.Supp. 2d 779, 782 (III) (S.D. Miss. 2011), citing Miss. Code Ann. § 11-1-63 (a).

reasonable care should have known, about the danger that caused the damage for which recovery is sought; and (ii) [t]he product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.[16]

Thus, under Mississippi law, a plaintiff must demonstrate that the product was defective and that a feasible alternative would have prevented the alleged harm. Evidence of a design defect must be supported by expert testimony, and the failure to designate an expert who is prepared to offer such evidence demonstrates the lack of a *prima facie* case."[17]

Here, without expert testimony, the Moores have failed to provide evidence that any alleged defect in the design of the car hauler rendered the product

---

[16] Miss. Code. Ann. § 11-1-63 (f).

[17] *Cothren*, 798 F.Supp. 2d at 782 (II). See also *Elliot v. Amadas Indus., Inc.*, 796 F. Supp. 2d 796, 803 (II) (B) (2) (S.D. Miss. 2011) (granting summary judgment to the defense after excluding the testimony of the plaintiffs' expert in design defect case); *Brown v. GMC*, 4 So.3d 400, 402-403 (Miss. Ct. App. 2009) (affirming the grant of summary judgment to the defendant because the plaintiff failed to provide any expert testimony in support of her design and manufacturing defect claims).

11

unreasonably dangerous or that a feasible design alternative existed at the time of Dennis's accident that would have prevented the harm without impairing the utility, usefulness, practicality, or desirability of the car hauler. Under these circumstances, the trial court properly granted summary judgment to Cottrell as to the Moores's design defect claims.[18]

(b) *Failure-to-warn.* The Moores argue that the trial court erred by granting summary judgment on this claim because none of the warning stickers on the car hauler or in the operator's manual provided information on proper placement, securing mechanisms, and usage of the ladder. But Dennis cannot recall whether or not the car hauler from which he fell had warning labels regarding the ladders, and he admitted only that he read "some" of the operator's manual. Under Mississippi law, "[t]he presence or absence of anything in an unread [product] manual simply cannot proximately cause a plaintiff's damages."[19] More importantly, the Moores's failure-to-warn claims essentially allege that Cottrell failed to warn Dennis about the

---

[18] See *Cothren*, 798 F.Supp. 2d at 782; *Grant v. Ford Motor Co.*, 89 So. 3d 655, 675 (III) (B) (Miss. Ct. App. 2012) ("In order to prove causation, a potential plaintiff must offer expert testimony that the product was defective. . . . Without expert testimony, the plaintiff cannot prove causation or defect . . . and cannot maintain her claim as a matter of law."). See also *Butler*, 310 Ga. App. at 30 (2).

[19] *Palmer v. Volkswagen of America, Inc.*, 904 So. 2d 1077, 1084 (Miss. 2005).

use of mechanisms, including ladder hooks, with which the car hauler at issue was not equipped at the time of his accident. Under these circumstances, the trial court properly granted summary judgment on the Moores's failure-to-warn claim.

*Judgment affirmed. Phipps, P. J., Ray and McMillian, JJ., concur. Ellington, P. J., concurs in judgment only. Barnes, P. J. and McFadden, J., dissent.*

A15A0802. MOORE et al. v. COTTRELL, INC.

MCFADDEN, Judge, dissenting.

It is no basis for objection that plaintiffs' first expert did not personally inspect the car hauler. Dr. Cohen holds a Ph.D. in Human Factors and Ergonomics and has made a particular study of car haulers. As the trial court held, "he is qualified to testify as an expert in, essentially, safety issues related to falls." A qualified expert "is free to opine about a complicated matter without any firsthand knowledge of the facts in the case, and based upon otherwise inadmissible hearsay if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming

opinions or inferences upon the subject.'" *HNTB Georgia v. Hamilton-King*, 287 Ga. 641, 645-46 (697 SE2d 770) (2010) quoting *United States v. Frazier*, 387 F3d 1244, 1260 (11th Cir. 2004).

If Dr. Cohen can be faulted, it is for belaboring the obvious. Moore fell because he had neither a handhold nor a functional ladder. He was clinging by his fingertips to the roof of a very large SUV, maneuvering sideways with his feet only partially on a narrow beam. In the rain. When his foot slipped, he had nothing to hang onto. So he fell.

Dr. Cohen's testimony might shed additional light, but it was not necessary to avoid summary judgment. Georgia law imposes no across-the-board requirement of expert testimony in products liability cases. This court has repeatedly found in such cases that expert testimony was not necessary. See *Owens v. General Motors Corp.*, 272 Ga. App. 842, 847-848 (2) (b) (613 SE2d 651) (2005) (expert testimony not needed to prove alleged defect caused injury); *Williams v. American Med. Systems*, 248 Ga. App. 682, 683 (1) (548 SE2d 371) (2001) (claim survived summary judgment without expert testimony). See also *Williams v. Mast Biosurgery USA*, 644 F3d 1312, 1319 (II) (B) (11th Cir. 2011) (applying Georgia law).

2

As for Mississippi, it is true that the federal opinions cited by the majority contain some language suggesting that its does impose such an across-the-board requirement. But the Supreme Court of that state has held otherwise: it has ruled that the issue must be approached "on a case-by-case basis." *Forbes v. Gen. Motors Corp.*, 935 So. 2d 869, 878 (Miss. 2006). And the Mississippi Court of Appeals opinion cited by the majority simply notes without comment that the trial court had "ruled that Brown was not required to have an expert in biomechanics testify in order to establish proximate causation [of an air-bag failure]; therefore, GM's motion for summary judgment on that issue was denied." *Brown v. Gen. Motors Corp.*, 4 So. 3d 400, 401 (Miss. Ct. App. 2009).

For those reasons I would hold that the trial court erred in excluding Dr. Cohen's testimony and moreover that expert testimony was not necessary to avoid summary judgment. I therefore respectfully dissent.

I am authorized to state that Presiding Judge Barnes joins in this dissent.