**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

June 27, 2018

# In the Court of Appeals of Georgia

A18A0739. LEE v. SMITH.

RICKMAN, Judge.

After a motor vehicle accident, David A. Smith II filed a complaint against Donggue Lee for negligence, seeking damages. A jury trial was held and the jury returned a verdict in favor of Smith in the amount of $2,000,000. Thereafter, the trial court entered judgment on the verdict plus interest and costs. On appeal, Lee contends that the trial court erred by excluding his expert witness, denying his motion for directed verdict regarding Smith's claim for lost future earnings, and denying his request for a special verdict form. For the following reasons, we affirm.

In 2014, Smith filed a complaint against Lee, asserting that Lee operated his vehicle negligently, which caused him serious injuries, and seeking damages for pain and suffering and medical expenses.

The trial court entered four scheduling orders in this case. The first scheduling order was entered in January 2016 and gave the parties six months to complete discovery. The second scheduling order extended the discovery completion date to December 31, 2016. A third scheduling order extended discovery three more months and set trial to begin on May 1, 2017. On March 30, 2017, Smith identified an expert sports agent who would testify "regarding the impact that [Smith's] injuries will have upon [Smith's] future in various aspects of his personal life and athletic career." On April 5, 2017, the trial court entered its fourth and final scheduling order, which set the trial date for August 7, 2017. This final scheduling order required that all trial witnesses, including experts, be identified on or before May 12, 2017.

On May 12, 2017, Smith supplemented his discovery responses to substitute his agent as the expert he intended to call at trial to testify regarding the impact of his injuries on his athletic career. Lee also amended his previous interrogatory response that he was not asserting a claim for lost earnings with:

> In addition to past, current and future lost earnings, [Smith] has further suffered special and/or general damages in the form of, inter alia, diminished earning capacity, diminished ability to work, labor or earn wages. Since the date of the accident giving rise to this lawsuit, [Smith's] occupation changed upon graduation from Auburn University in May 2016 from collegiate high jumper to professional high jumper.

2

As a result of the injuries suffered during the collision and the reasonable and necessary medical treatment resulting therefrom (including, inter alia, surgery in January 2017), [Smith] has lost earnings (including, inter alia, contract, sponsorship, incentive, appearance and various other forms of earnings associated with his profession) in an amount to be more fully shown at trial.

Lee deposed Smith's agent on June 20, 2017. Eight days later, Lee sent an e-mail to Smith identifying an expert it planned to call at trial to rebut Smith's agent's anticipated testimony regarding Smith's alleged future damages claims.

A pre-trial hearing was held in July 2017. At that hearing, Smith argued that Lee's expert should be excluded because he was not named by the deadline set in the scheduling order. Lee responded that he did not learn about Smith's lost earnings claim until the date experts were to be identified under the scheduling order; Lee also provided information about his expert's anticipated testimony. The trial court agreed with Smith, and excluded the witness because he was not properly identified within the constraints of the scheduling order.

At trial, Lee admitted fault for the accident, thus the sole issue for the jury was the amount of damages. Smith's agent testified that professional high jumpers make money through sponsorship contracts, appearance fees, and prize money for

competing in different track meets. He further testified that the length of a professional career for a high jumper was approximately ten years and that, if not for the surgery he had to undergo as a result of the accident, Smith would have earned "conservatively about a million dollars" over the course of his career. Additionally, the agent testified that, if not for the surgery, he would have been able to negotiate a contract for Smith in 2017 that he was "reasonably certain" would have included incentive bonuses if Smith was able to reach certain jump heights. When discussing incentive bonuses, the agent explained that, hypothetically, if Smith had an incentive bonus and was to break a world record he might earn $100,000 solely due to the jump height.

Smith's agent opined that while it was "reasonably certain" that Smith would make $1,000,000 during his career, he could have made $2.5 million under the potential 2017 contract. Additionally, Smith's agent testified that in May 2016 Smith was ranked fifth in the world. In Smith's agent's opinion, a high jumper ranked in the top ten in the world would make approximately $4,000,000 over his career and a top five high jumper would make around $6,000,000.

The jury returned a verdict in favor of Smith in the amount of $2,000,000. The trial court entered judgment on the verdict; Lee appeals from that judgment and the trial court's pre-trial ruling excluding his expert witness.

On appeal, Lee contends that the trial court erred by excluding his expert witness, denying his motion for directed verdict regarding Smith's claim for future lost earnings, and denying his request for a special verdict form.

1. Lee contends that the trial court erred by excluding his expert witness. We disagree.

"The imposition of scheduling deadlines for the identification of experts, and questions regarding the admission or exclusion of expert testimony, are left to the broad discretion of the trial court. And we have held that a trial court may exercise its discretion and exclude testimony from an expert not properly identified by a party, when done in violation of an express court order." (Citations and punctuation omitted.) *Moore v. Cottrell, Inc.*, 334 Ga. App. 791, 794 (2) (780 SE2d 442) (2015).

Lee argues that the trial court abused its discretion in enforcing the terms of the order because he was not aware of Smith's lost earnings claim until after the date that experts were required to be named pursuant to the order, but we are unpersuaded. Smith's $3,000,000 settlement demand and previous naming of an expert to testify

about Smith's future athletic career and possibly, an expert to testify about the applicable discount rate on future earnings, should have given Lee an indication of Smith's potential damages claims. Additionally, in July 2015, in response to a request for the production of documents related to a claim for lost earnings or diminished earning capacity Smith stated that he "was not claiming past or current lost wages. However, [Smith] may present evidence at the time of trial on this of diminished future wages or earning capacity[.]"

Here, the fourth scheduling order entered in this case expressly required that the parties identify all trial witnesses, including experts, by May 12, 2017, a date selected by the parties. Lee violated the terms of the scheduling order by failing to name his expert until June 28, 2017. Under these circumstances, we discern no abuse of the trial court's discretion in excluding Lee's expert. See *Moore*, 334 Ga. App. at 794 (2) (trial court did not abuse its discretion by striking affidavit from an expert identified in violation of a scheduling order); see also *Kohler v. Van Peteghem*, 330 Ga. App. 230, 238-239 (3) (767 SE2d 775) (2014) (no abuse of discretion in excluding from testifying an expert witness who was named in violation of express deadlines in a discovery order); compare *Hart v. Northside Hosp.*, 291 Ga. App. 208, 210 (1) n.9 (661 SE2d 576) (2008) (finding that the trial court abused its discretion

6

in excluding the testimony of two expert witnesses but "emphasiz[ing] that this [was] not a case where a party violated a court order explicitly directing the party to identify an expert witness for trial").

2. Lee contends that the trial court erred by denying his motion for directed verdict regarding Smith's claim for lost future earnings. Specifically, Lee argues that Smith's lost earnings claim was speculative and should have been dismissed.

> A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test.

(Citation and punctuation omitted.) *Robert E. Canty Bldg. Contractors v. Garrett Machine & Constr.*, 270 Ga. App. 871, 872 (1) (608 SE2d 280) (2004). "The question before this court is not whether the verdict and the judgment of the trial court were merely authorized, but is whether a contrary judgment was demanded." (Citations and punctuation omitted.) Id.

Lee asserted special damages claims for both loss of future earnings and diminished earning capacity. A loss of future earnings claim requires "proof of loss

7

of definite earnings that would have been received in the future but for an injury even though the injury is not permanent." (Citation and punctuation omitted.) *Myrick v. Stephanos*, 220 Ga. App. 520, 521 (2) (472 SE2d 431) (1996). However, a claim for diminished earning capacity requires a physical injury resulting in permanent or total physical disability and,

> involves numerous considerations, among which are, first, the earnings before the injury, earnings after the injury, probability of increased or decreased earnings in the future, considering the capacity of the injured party, effects of sickness and old age, etc. . . . While proof of the plaintiff's actual earnings, either before or after the injury, is not essential to the establishment of the value of the plaintiff's decreased earning capacity, there must nevertheless appear some evidence, either direct or circumstantial, tending to show what the plaintiff was capable of earning both before and after the injury[.]"

(Citations and punctuation omitted.) Id.

Smith presented evidence, through his doctor, that the accident caused Smith's injuries "to a reasonable degree of medical certainty." After the accident, the injury worsened until surgery was medically necessary. The doctor opined that the injury negatively impacted Smith's high-jumping performance, including his performance at the Olympics. The doctor also testified that because of the injury and the resulting

8

surgery, Smith had sustained a permanent injury, and would be unable to achieve the high-jumping status he reached prior to the injury and unable to return to the Olympics.

Smith's agent testified that prior to the surgery Smith was ranked fifth in the world and that a high jumper ranked in the top ten in the world would make approximately $4,000,000 over his career and a top five high jumper would make around $6,000,000. Smith's agent opined that if not for the surgery he had to undergo as a result of the accident, Smith would have earned "conservatively about a million dollars" over the course of his career. Smith's agent also testified that, if not for the surgery, he would have been able to negotiate a contract for Smith in 2017, and under that contract he would have had the potential to make 2.5 million dollars.

We find that Smith presented some evidence tending to show what he was capable of earning both before and after the injury and, therefore, some evidence of diminished earning capacity. Accordingly, the trial court did not err in denying Lee's motion for directed verdict. See *Robert E. Canty Bldg. Contractors*, 270 Ga. App. at 872-873 (1) (when there was some evidence of special damages, trial court did not err in denying defendant's directed verdict as to plaintiff's special damages claim); *Alto Park Super Mart, Inc. v. White*, 216 Ga. App. 285, 287 (2) (454 SE2d 580)

9

(1995) (trial court did not err in charging the jury on future earnings where there was evidence that the plaintiff was injured, the injury was worsening, eventually he may be unable to work at his current job, and he was unable to work as many hours a day as he could before he was injured); see also *Michaels v. Kroger Co.*, 172 Ga. App. 280, 285 (3) (322 SE2d 903) (1984) ("The general rule that the amount of damages must be proved with a reasonable degree of certainty and cannot be based on guesswork does not mean that only a plaintiff who works on an everyday basis and on the date of the injury can prove a diminished earning capacity. Nor does the rule mean that one who works intermittently cannot recover for diminished earning capacity, i.e. an artist, sculptor, professional athlete, author, actor, dancer, singer, musician, or even a lawyer.") (citation omitted.).

3. Lee contends that the trial court erred by denying his request for a special verdict form.

OCGA § 9-11-49 provides that the trial court "may require a jury to return only a special verdict[.]" "The submission of a special verdict is within the discretion of the trial court; absent an abuse of that discretion, the court's choice will not be overturned." *News Publishing Co. v. DeBerry*, 171 Ga. App. 787, 790 (3) (321 SE2d 112) (1984). Prior to trial Lee requested a special verdict form to "break it down

10

between special damages and general damages." On appeal, Lee argues that if the trial court had utilized a special verdict form "then the parties would not be left to speculate as to whether the jury's verdict included damages for [Smith's] speculative future lost wages." We found in Division 2, however, that Smith's special damages claim was not speculative. Accordingly, Smith has not met his burden to show that the trial court abused its discretion in failing to submit a special verdict form to the jury. See *Pressley v. Jennings*, 227 Ga. 366, 376 (20) (180 SE2d 896) (1971); see also *News Publishing Co.*, 171 Ga. App. at 790 (3).

*Judgment affirmed. McFadden, P. J., concurring and Ray, J., dissenting.\**

*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a).

# In the Court of Appeals of Georgia

A18A0739. LEE v. SMITH.

R<small>AY</small>, Judge, dissenting.

Respectfully, I dissent to the majority's decision in Division 1 affirming the trial court's exclusion of an expert witness named after the scheduling order deadline. While adherence to a scheduling order certainly is important for trial speed and efficiency, in circumstances such as those in the instant case, blind adherence cannot trump our consistent and longstanding posture in favor of the admission of relevant evidence. *Redcedar, LLC v. CML-GA Social Circle, LLC*, 341 Ga. App. 110, 117 (5) (798 SE2d 334) (2017). See OCGA §§ 24-4-401, 24-4-402.

Here, the majority notes that Lee did not identify a rebuttal expert until June 28, 2017, while the scheduling order provided that all experts must be named by May 12, 2017. However, I find it important to consider that Smith waited until the May 12,

2

2017, which was the deadline for identification of experts, to reveal both that he would claim lost earnings and that he would use a particular expert to testify on this point. Further, the record shows that Smith received the expert's written opinion on May 2, 2017, *10 days* before he notified his opponent. Lee likely did not receive notice of the new claim and expert until after May 12, 2017, because the notice was sent by regular mail,[1] thus making it impossible for Lee to name a rebuttal expert in compliance with the scheduling order.

Although the majority finds that some of Smith's earlier filings "should have given Lee an indication of Smith's potential damages claims[,]" the record shows that Smith had earlier responded to an interrogatory and stated that he would "*not* [be] claiming lost earnings." (Emphasis supplied.) "When a party receives a substantive answer to a discovery request, they are entitled to believe that answer, and they are not required to . . . seek clarification of that substantive response[.]" (Citation omitted.) *Resurgens, P. C. v. Elliott*, 301 Ga. 589, 595 (2) (a) (800 SE2d 580) (2017).

---

[1] While the certificate of service of the amendments to the response to the interrogatories also indicate it was e-mailed, the record does not indicate what e-mail address was used, or whether the e-mail was received by Lee at all or during the business day of May 12th.

Lee clearly was harmed by his inability to present his own rebuttal expert. See generally *Walker v. Sutton*, 222 Ga. App. 638, 639 (1) (476 SE2d 34) (1996) (estopping a party from tardy contradiction of interrogatory responses when the opposing party had relied to its detriment on the prior response). At trial, Smith's expert testified about the amount of money professional high jumpers earn through sponsorship contracts, appearance fees, and prizes. The expert testified that Smith ranked fifth in the world at a meet in 2016 and that a top five high jumper could make about $6,000,000 over the course of his career. During closing argument, Smith's counsel repeatedly argued that Lee failed to rebut this testimony, saying, "[w]ho brought you the only evidence as to what a professional high jumper makes, what . . . Smith was reasonably certain to earn over the course of his career? We did. Don't you think for one minute that . . . if anything we're saying about the amount of his damages is wrong, [Lee's lawyers would] sit right there, look you in they eye and tell you how we're wrong[?]"

In support of the trial court's strict adherence to the scheduling order, the majority relies on cases which are not factually similar to the circumstances at issue. *Moore v. Cottrell, Inc.*, 334 Ga. App. 791, 794 (2) (780 SE2d 442) (2015) (no abuse of discretion in striking expert affidavit where plaintiffs did not name the expert until

4

2 ½ years after scheduling order deadline and four days prior to summary judgment hearing); *Kohler v. Van Peteghem*, 330 Ga. App. 230, 238-239 (3) (767 SE2d 775) (2014) (no abuse of discretion in the exclusion of expert testimony where plaintiff failed to identify expert or provide information about his testimony until 16 months after the scheduling order deadline and on eve of trial). Unlike the case before us, neither *Moore* nor *Kohler* involves a party who added a critical witness on the deadline date but in such a manner that his opponent was precluded from mustering a timely response.

The majority's reasoning in this matter is inconsistent with our Court's recognized purpose for the rules of discovery. The rules of discovery are designed to "remove the potential for secrecy and hiding of material . . . [and] are designed to provide parties with the opportunity to obtain material knowledge of all relevant facts, thereby reducing the element of surprise at trial." (Citations omitted.) *Hanna Creative Enterprises, Inc. v. Alterman Foods, Inc.*, 156 Ga. App. 376, 378 (2) (274 SE2d 761) (1980).

Of course, the admission or exclusion of expert testimony rests in the trial court's broad discretion, and we do not reverse such decisions absent abuse of that discretion. However, "[i]n a civil suit, it is an abuse of discretion to exclude a relevant

5

witness solely on the ground that the witness was not identified during discovery or in a timely manner." (Citations omitted.) *The Kroger Co. v. Walters*, 319 Ga. App. 52, 60 (2) (b) (735 SE2d 99) (2012). Additionally, I believe that a credible case has been made that the trial court did not really exercise any discretion at all and did not consider the reasons for Lee's failure to name an expert timely, but that it automatically deferred to the scheduling order. Thus, I believe that the trial court's decision was in error. Accordingly, I must dissent.[2]

---

[2] Because I believe that a new trial should be ordered due to the trial court's incorrect decision not to allow Lee's expert to testify, I do not express an opinion on the other errors alleged on appeal.