Rickman, Judge.
After a motor vehicle accident, David A. Smith II filed a complaint against Donggue Lee for negligence, seeking damages. A jury trial was held and the jury returned a verdict in favor of Smith in the amount of $2,000,000. Thereafter, the trial court entered judgment on the verdict plus interest and costs. On appeal, Lee contends that the trial court erred by excluding his expert witness, denying his motion for directed verdict regarding Smith's claim for lost future earnings, and denying his request for a special verdict form. For the following reasons, we affirm.
In 2014, Smith filed a complaint against Lee, asserting that Lee operated his vehicle negligently, which caused him serious injuries, and seeking damages for pain and suffering and medical expenses.
The trial court entered four scheduling orders in this case. The first scheduling order was entered in January 2016 and gave the parties six months to complete discovery. The second scheduling order extended the discovery completion date to December 31, 2016. A third scheduling order extended discovery three more months and set trial to begin on May 1, 2017. On March 30, 2017, Smith identified an expert sports agent who would testify "regarding the impact that [Smith's] injuries will have upon [Smith's] future in various aspects of his personal life and athletic career." On April 5, 2017, the trial court entered its fourth and final scheduling order, which set the trial date for August 7, 2017. This final scheduling order *786 required that all trial witnesses, including experts, be identified on or before May 12, 2017.
On May 12, 2017, Smith supplemented his discovery responses to substitute his agent as the expert he intended to call at trial to testify regarding the impact of his injuries on his athletic career. Lee also amended his previous interrogatory response that he was not asserting a claim for lost earnings with:
In addition to past, current and future lost earnings, [Smith] has further suffered special and/or general damages in the form of, inter alia, diminished earning capacity, diminished ability to work, labor or earn wages. Since the date of the accident giving rise to this lawsuit, [Smith's] occupation changed upon graduation from Auburn University in May 2016 from collegiate high jumper to professional high jumper. As a result of the injuries suffered during the collision and the reasonable and necessary medical treatment resulting therefrom (including, inter alia, surgery in January 2017), [Smith] has lost earnings (including, inter alia, contract, sponsorship, incentive, appearance and various other forms of earnings associated with his profession) in an amount to be more fully shown at trial.
Lee deposed Smith's agent on June 20, 2017. Eight days later, Lee sent an e-mail to Smith identifying an expert it planned to call at trial to rebut Smith's agent's anticipated testimony regarding Smith's alleged future damages claims.
A pre-trial hearing was held in July 2017. At that hearing, Smith argued that Lee's expert should be excluded because he was not named by the deadline set in the scheduling order. Lee responded that he did not learn about Smith's lost earnings claim until the date experts were to be identified under the scheduling order; Lee also provided information about his expert's anticipated testimony. The trial court agreed with Smith, and excluded the witness because he was not properly identified within the constraints of the scheduling order.
At trial, Lee admitted fault for the accident, thus the sole issue for the jury was the amount of damages. Smith's agent testified that professional high jumpers make money through sponsorship contracts, appearance fees, and prize money for competing in different track meets. He further testified that the length of a professional career for a high jumper was approximately ten years and that, if not for the surgery he had to undergo as a result of the accident, Smith would have earned "conservatively about a million dollars" over the course of his career. Additionally, the agent testified that, if not for the surgery, he would have been able to negotiate a contract for Smith in 2017 that he was "reasonably certain" would have included incentive bonuses if Smith was able to reach certain jump heights. When discussing incentive bonuses, the agent explained that, hypothetically, if Smith had an incentive bonus and was to break a world record he might earn $100,000 solely due to the jump height.
Smith's agent opined that while it was "reasonably certain" that Smith would make $1,000,000 during his career, he could have made $2.5 million under the potential 2017 contract. Additionally, Smith's agent testified that in May 2016 Smith was ranked fifth in the world. In Smith's agent's opinion, a high jumper ranked in the top ten in the world would make approximately $4,000,000 over his career and a top five high jumper would make around $6,000,000.
The jury returned a verdict in favor of Smith in the amount of $2,000,000. The trial court entered judgment on the verdict; Lee appeals from that judgment and the trial court's pre-trial ruling excluding his expert witness.
On appeal, Lee contends that the trial court erred by excluding his expert witness, denying his motion for directed verdict regarding Smith's claim for future lost earnings, and denying his request for a special verdict form.
1. Lee contends that the trial court erred by excluding his expert witness. We disagree.
"The imposition of scheduling deadlines for the identification of experts, and questions regarding the admission or exclusion of expert testimony, are left to the broad *787 discretion of the trial court. And we have held that a trial court may exercise its discretion and exclude testimony from an expert not properly identified by a party, when done in violation of an express court order." (Citations and punctuation omitted.) Moore v. Cottrell, Inc. , 334 Ga. App. 791, 794 (2), 780 S.E.2d 442 (2015).
Lee argues that the trial court abused its discretion in enforcing the terms of the order because he was not aware of Smith's lost earnings claim until after the date that experts were required to be named pursuant to the order, but we are unpersuaded. Smith's $3,000,000 settlement demand and previous naming of an expert to testify about Smith's future athletic career and possibly, an expert to testify about the applicable discount rate on future earnings, should have given Lee an indication of Smith's potential damages claims. Additionally, in July 2015, in response to a request for the production of documents related to a claim for lost earnings or diminished earning capacity Smith stated that he "was not claiming past or current lost wages. However, [Smith] may present evidence at the time of trial on this of diminished future wages or earning capacity[.]"
Here, the fourth scheduling order entered in this case expressly required that the parties identify all trial witnesses, including experts, by May 12, 2017, a date selected by the parties. Lee violated the terms of the scheduling order by failing to name his expert until June 28, 2017. Under these circumstances, we discern no abuse of the trial court's discretion in excluding Lee's expert. See Moore , 334 Ga. App. at 794 (2), 780 S.E.2d 442 (trial court did not abuse its discretion by striking affidavit from an expert identified in violation of a scheduling order); see also Kohler v. Van Peteghem , 330 Ga. App. 230, 238-239 (3), 767 S.E.2d 775 (2014) (no abuse of discretion in excluding from testifying an expert witness who was named in violation of express deadlines in a discovery order); compare Hart v. Northside Hosp. , 291 Ga. App. 208, 210 (1) n.9, 661 S.E.2d 576 (2008) (finding that the trial court abused its discretion in excluding the testimony of two expert witnesses but "emphasiz[ing] that this [was] not a case where a party violated a court order explicitly directing the party to identify an expert witness for trial").
2. Lee contends that the trial court erred by denying his motion for directed verdict regarding Smith's claim for lost future earnings. Specifically, Lee argues that Smith's lost earnings claim was speculative and should have been dismissed.
A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test.
(Citation and punctuation omitted.) Robert E. Canty Bldg. Contractors v. Garrett Machine & Constr. , 270 Ga. App. 871, 872 (1), 608 S.E.2d 280 (2004). "The question before this court is not whether the verdict and the judgment of the trial court were merely authorized, but is whether a contrary judgment was demanded." (Citations and punctuation omitted.) Id.
Lee asserted special damages claims for both loss of future earnings and diminished earning capacity. A loss of future earnings claim requires "proof of loss of definite earnings that would have been received in the future but for an injury even though the injury is not permanent." (Citation and punctuation omitted.) Myrick v. Stephanos , 220 Ga. App. 520, 521 (2), 472 S.E.2d 431 (1996). However, a claim for diminished earning capacity requires a physical injury resulting in permanent or total physical disability and,
involves numerous considerations, among which are, first, the earnings before the injury, earnings after the injury, probability of increased or decreased earnings in the future, considering the capacity of the injured party, effects of sickness and old age, etc. ... While proof of the plaintiff's actual earnings, either before or after the injury, is not essential to the establishment of the value of the plaintiff's decreased *788 earning capacity, there must nevertheless appear some evidence, either direct or circumstantial, tending to show what the plaintiff was capable of earning both before and after the injury[.]"
(Citations and punctuation omitted.) Id.
Smith presented evidence, through his doctor, that the accident caused Smith's injuries "to a reasonable degree of medical certainty." After the accident, the injury worsened until surgery was medically necessary. The doctor opined that the injury negatively impacted Smith's high-jumping performance, including his performance at the Olympics. The doctor also testified that because of the injury and the resulting surgery, Smith had sustained a permanent injury, and would be unable to achieve the high-jumping status he reached prior to the injury and unable to return to the Olympics.
Smith's agent testified that prior to the surgery Smith was ranked fifth in the world and that a high jumper ranked in the top ten in the world would make approximately $4,000,000 over his career and a top five high jumper would make around $6,000,000. Smith's agent opined that if not for the surgery he had to undergo as a result of the accident, Smith would have earned "conservatively about a million dollars" over the course of his career. Smith's agent also testified that, if not for the surgery, he would have been able to negotiate a contract for Smith in 2017, and under that contract he would have had the potential to make 2.5 million dollars.
We find that Smith presented some evidence tending to show what he was capable of earning both before and after the injury and, therefore, some evidence of diminished earning capacity. Accordingly, the trial court did not err in denying Lee's motion for directed verdict. See Robert E. Canty Bldg. Contractors , 270 Ga. App. at 872-873 (1), 608 S.E.2d 280 (when there was some evidence of special damages, trial court did not err in denying defendant's directed verdict as to plaintiff's special damages claim); Alto Park Super Mart, Inc. v. White , 216 Ga. App. 285, 287 (2), 454 S.E.2d 580 (1995) (trial court did not err in charging the jury on future earnings where there was evidence that the plaintiff was injured, the injury was worsening, eventually he may be unable to work at his current job, and he was unable to work as many hours a day as he could before he was injured); see also Michaels v. Kroger Co. , 172 Ga. App. 280, 285 (3), 322 S.E.2d 903 (1984) ("The general rule that the amount of damages must be proved with a reasonable degree of certainty and cannot be based on guesswork does not mean that only a plaintiff who works on an everyday basis and on the date of the injury can prove a diminished earning capacity. Nor does the rule mean that one who works intermittently cannot recover for diminished earning capacity, i.e. an artist, sculptor, professional athlete, author, actor, dancer, singer, musician, or even a lawyer.") (citation omitted.).
3. Lee contends that the trial court erred by denying his request for a special verdict form.
OCGA § 9-11-49 provides that the trial court "may require a jury to return only a special verdict[.]" "The submission of a special verdict is within the discretion of the trial court; absent an abuse of that discretion, the court's choice will not be overturned." News Publishing Co. v. DeBerry , 171 Ga. App. 787, 790 (3), 321 S.E.2d 112 (1984). Prior to trial Lee requested a special verdict form to "break it down between special damages and general damages." On appeal, Lee argues that if the trial court had utilized a special verdict form "then the parties would not be left to speculate as to whether the jury's verdict included damages for [Smith's] speculative future lost wages." We found in Division 2, however, that Smith's special damages claim was not speculative. Accordingly, Smith has not met his burden to show that the trial court abused its discretion in failing to submit a special verdict form to the jury. See Pressley v. Jennings , 227 Ga. 366, 376 (20), 180 S.E.2d 896 (1971) ; see also News Publishing Co. , 171 Ga. App. at 790 (3), 321 S.E.2d 112.
Judgment affirmed.
McFadden, P. J., concurring and Ray, J., dissenting.*
*789 *THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a).